NOT DESIGNATED FOR PUBLICATION

No. 128,562

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JORGE GALAN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ford District Court; ANDREW M. STEIN, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*John M. Lindner*, of Lindner Law Firm, of Garden City, for appellant.

*Ashley R. Iverson*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: Jorge Galan appeals the district court's decision affirming the administrative suspension of his driver's license. Galan claims multiple errors. This court finds there is substantial competent evidence supporting the district court's finding that there was reasonable suspicion to extend the traffic stop, and sufficient probable cause to request a preliminary breath test (PBT) and to arrest Galan for driving under the influence, and to request evidentiary testing. Further, the electronically affixed signature of the trooper did not invalidate the DC-27 form. We affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2021, Trooper Reed Sperry observed Galan failing to maintain a single lane while driving and stopped Galan's vehicle. Based upon the odor of alcohol, slurred speech, and bloodshot eyes, Sperry initiated field sobriety tests. Following the field sobriety tests, Galan failed the PBT. Galan consented to an evidentiary breath test and blew a 0.094. Sperry completed a DC-27 form to suspend Galan's license. The form contained Sperry's typed initials and an electronic copy of his signature.

Galan challenged the suspension of his license. The Kansas Department of Revenue (KDOR) affirmed the suspension of Galan's license.

Galan filed a petition for review in the district court. He alleged (1) Sperry did not have reasonable suspicion to detain him; (2) Sperry did not have reasonable suspicion to extend the detention; (3) there was no probable cause for the PBT; (4) Galan's arrest and the request for an evidentiary breath test was made without authority; (5) Sperry "badgered" Galan for "nearly 30 minutes" and provided him with "misinformation" in order to secure testing; and (6) the DC-27 was not valid because Sperry did not physically sign the document and the electronic signature was added to a blank document.

At the hearing, Galan withdrew his challenge to the legality of the stop. Galan testified that when he was pulled over he immediately pulled over and parked lawfully. Sperry asked Galan to get out of his vehicle and follow him to his patrol car because Sperry smelled alcohol. Galan told Sperry that he had consumed alcohol. Sperry requested Galan do some standard field sobriety tests (SFST), and Galan believed he completed those tests as directed.

Galan testified that Sperry told him he had to do a PBT. Following the PBT, Sperry placed Galan under arrest, read Galan "some notices," and requested Galan complete another test. Galan refused testing. Galan testified that Sperry told him if he did not take the evidentiary breath test, he would "automatically" lose his license for one year; however, if he took the test and failed, he would only lose his license for 30 days. Sperry did not physically sign the DC-27 form before handing it to Galan.

Next, Galan called Sperry as a witness. Sperry explained that the results of the PBT were part of the totality of the circumstances of his driving under the influence testing. He continued, "I use not only the non-traditional test, the SFST test, as well as any other cognitive clues of impairment to include not only that preliminary breath test, so it's a totality of the circumstances." He admitted that the result of the PBT was part of his determination of probable cause.

Sperry testified that Galan initially refused to take the evidentiary breath test. Sperry admitted he may have used the term "automatically" but explained that he did not mean "that night, but once the 30 days had passed, then it would be suspended." Sperry denied trying to make Galan change his mind regarding testing.

Sperry also testified that after Galan completed testing, he served Galan with the DC-27 form. The DC-27 is a form that law enforcement officers are required to fill out to certify that there was a test requested pursuant to K.S.A. 8-1002 which resulted in either a test failure or a test refusal. Sperry explained that "[t]he electronic signature is done on the Intoxilyzer as the same signature would be utilized on the breath test results. That same signature gets applied to the copy of the DC-27 that would also be printed out as well." Sperry acknowledged that his signature occurred prior to the breath test, and, had Galan remained steadfast in his refusal, would have likely completed a handwritten carbon copy DC-27 for the refusal.

3

On cross-examination, Sperry explained that the Intoxilyzer required him to complete the DC-27, and he can see the DC-27 in parts while completing the document. Sperry stated that he cannot view the entire document as a full-page form.

No other witnesses testified. Galan also submitted Sperry's dash cam video evidence of the stop and asked the district court to consider it as part of the evidence in this case.

On September 30, 2024, the district court denied Galan's petition for review and affirmed KDOR's suspension. The court found Sperry had reasonable suspicion to extend the duration of the stop based on the odor of alcohol, the time of night, the observed traffic infractions, and Galan's "explanation of where he had been." The district court found that Galan consented to the PBT but, even if Galan had not consented, Sperry "had already reached the threshold of probable cause that [Galan] was driving impaired before the trooper administered the preliminary breath test." As a result, "the admissibility of the preliminary breath test results is ultimately not dispositive as to the validity of the agency action to suspend [Galan's] license." Similarly, the district court concluded that Sperry had probable cause to arrest based on Galan's traffic infractions, odor of alcohol, admission to consuming alcohol, and Galan's performance on the field sobriety testing. The district court found that Sperry did not misstate the law when discussing the DC-70 testing notices and Galan's consent was valid. Finally, the district court found that Sperry "'signed' and thereby certified the DC-27 form once he printed it with his electronic signature affixed" and that there was "no meaningful difference between physically signing the form and affixing an electronic signature."

Galan appeals.

ANALYSIS

*Standard of Review*

Appellate courts review a district court's decision in a driver's license suspension case as a mixed question of law and fact. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). As such, this court reviews the factual findings under the substantial competent evidence standard. The conclusions of law based on those findings are subject to unlimited review. 309 Kan. at 1213. Substantial competent evidence refers to such legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

## THE DISTRICT COURT DID NOT ERR WHEN IT FOUND TROOPER SPERRY HAD REASONABLE SUSPICION TO EXTEND THE TRAFFIC STOP

On appeal, Galan argues "[a] driving infraction, an odor of alcohol, and an admission to drinking one or two beers does not amount to reasonable suspicion." Galan asserts that the odor of alcohol is insufficient reasonable suspicion, "[t]he time of night should not be a consideration in a free society," and that "[t]he amount of alcohol [he] admitted to drinking is unlikely to have rendered him unsafe to drive."

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024). Because a traffic stop is a seizure under the Fourth Amendment, an officer "must have a reasonable and articulable suspicion that the driver has committed, is committing, or is about to commit a crime" in order to conduct the traffic stop. *Strickert v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 1, 7, 462 P.3d 649 (2020). A stop "must last no longer than is necessary to effectuate the purpose of the stop," and reasonable

suspicion that the person "was or is involved in additional criminal activity" is necessary to extend the stop beyond the time necessary to resolve the traffic infraction. 58 Kan. App. 2d at 7-8. Whether reasonable suspicion exists is determined under a totality of the circumstances analysis. 58 Kan. App. 2d at 7. When conducting a totality of the circumstances analysis, a court "should not engage in '"assessing each factor or piece of evidence in isolation."'" *City of Wichita v. Molitor*, 301 Kan. 251, 266, 314 P.3d 1275 (2015) (quoting *United States v. Jones*, 701 F.3d 1300, 1315 [10th Cir. 2012]). "[T]he licensee shall have the burden to show that the decision of the agency should be set aside." K.S.A. 8-1020(q).

Galan cites *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 1101, 54 P.3d 532 (2002) to suggest that the odor of alcohol alone is insufficient to establish reasonable suspicion. Similarly, he cites *Molitor*, 301 Kan. at 267, to suggest the amount of alcohol he stated he consumed was "unlikely to have rendered him unsafe to drive." In *Molitor*, the Kansas Supreme Court compared K.S.A. 2010 Supp. 8-1012(b)—which required reasonable suspicion to believe the driver was operating a vehicle with an illegal level of alcohol in his or her system—and an earlier version of the statute which simply required reasonable suspicion there was alcohol in the driver's system. 301 Kan. at 266-67. The *Molitor* court noted that evidence that a driver had "two or three beers" tended "to refute the notion that the driver was operating the vehicle with an illegal level of alcohol in his or her body" but was compelling evidence the driver had *some* alcohol in his or her system. 301 Kan. at 267.

For support, Galan cites *State v. Pollman*, 286 Kan. 881, 190 P.3d 234 (2008). However, *Pollman* is directly adverse to Galan's argument. In *Pollman*, the defendant was driving a motorcycle, and his wife was driving her own motorcycle in "the evening." 286 Kan. at 882. When officers stopped his wife for a traffic violation, Pollman also pulled over. An officer stood with Pollman while other officers conducted the traffic stop. The officer who stood with Pollman detected an odor of alcohol on Pollman's breath and

Pollman admitted he had consumed "'a few'" beers but exhibited no other signs of impairment. 286 Kan. at 884. An officer administered a PBT and conducted field sobriety tests.

Pollman moved to suppress based on a lack of reasonable suspicion of driving under the influence. The district court denied the motion to suppress, and Pollman was convicted of driving under the influence. On appeal, the Kansas Supreme Court "decline[d], however, to focus this case upon an issue of whether the odor of alcohol alone creates a reasonable suspicion that Pollman had committed a crime. Such a singular focus would be inappropriate because there were other weighty factors present in this case." 286 Kan. at 894. In addition to the odor of alcohol, the Kansas Supreme Court noted that Pollman admitted he had been drinking and explained that the fact the officer "did not know how recently the alcohol had been consumed or the quantity of this consumption . . . does not negate reasonable suspicion." 286 Kan. at 895. The *Pollman* court concluded that, under the totality of the circumstances, there was reasonable suspicion "to justify an investigation into whether Pollman, who was observed driving, was operating his motorcycle while under the influence of alcohol." 286 Kan. at 897.

Here, the district court found Sperry had reasonable suspicion to extend the duration of the traffic stop based upon Galan swerving within his lane and crossing lines multiple times. Additionally, the district court found the odor of alcohol, Galan's admission he had been at a bar, and the time of night of the stop were factors supporting the extension of the traffic stop.

Galan argues against each of the district court's findings independently. However, *Molitor* cautions that the evidence must be examined in the totality of the circumstances instead of assessing each piece of evidence individually. 301 Kan. at 266. When viewed in the totality of the circumstances, substantial competent evidence supports the district court's findings. Sperry testified that he had conducted between 1,100 and 1,200 driving

under the influence investigations. The DC-27 indicated that Sperry saw Galan fail to maintain a single lane and observed the odor of alcohol, slurred speech, and bloodshot eyes, and that Galan admitted to consuming alcohol. The dash cam video, which was admitted into evidence, shows Galan crossing both the center line and the white lines before Sperry opted to pull Galan over. Galan admitted to drinking at the Palomino Club, and Sperry smelled alcohol emanating from Galan. There is substantial competent evidence supporting the district court's finding that there was reasonable suspicion to extend Galan's detention to conduct field sobriety testing.

## THE DISTRICT COURT DID NOT ERR WHEN IT FOUND THERE WAS PROBABLE CAUSE TO REQUEST A PRELIMINARY BREATH TEST

Galan claims that the trooper lacked probable cause to administer the PBT. The district court utilized a probable cause standard when evaluating this issue. K.S.A. 8-1012(a) controls the administration of a PBT, and requires an officer to have "reasonable suspicion" to believe the operator has been driving the vehicle under the influence of alcohol before requesting that a person submit to a PBT. "Reasonable suspicion" is synonymous with "probable cause." *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013).

Substantial competent evidence supports the district court's finding that Sperry had probable cause to request Galan take a PBT. The video shows Galan crossing both the center yellow line and the white line before being pulled over. Sperry smelled the odor of alcohol, Galan had bloodshot eyes and slurred speech, and Galan admitted to drinking earlier in the evening. Before asking Galan to complete standardized field sobriety tests,

8

Sperry asked Galan to recite the alphabet from D to Q without singing. Galan could not. Nor was Galan able to count backward from 77 to 59 without skipping numbers.

Contrary to Galan's arguments, his performance on the standardized field sobriety tests does nothing to diminish probable cause. Galan repeatedly attempted to start the walk-and-turn test before being instructed to begin; Galan began counting on the wrong foot; completed an improper turn; and was unable to keep his arms to his side. During the one-leg stand test, Galan attempted to begin before being instructed, was unable to keep his arms to his side, and swayed.

Galan's next argument is that he did not voluntarily submit to the PBT. Because a PBT is considered a search, a search warrant is required before it is given unless an exception exists. *State v. Edgar*, 296 Kan. 513, 526, 294 P.3d 251 (2013). An exception occurs if Galan gives "voluntary, knowing, and intelligent consent." 296 Kan. at 526.

Prior to the PBT being administered, the following dialog occurred:

"[TROOPER SPERRY:]  Alright, I've got one other thing I want you to do for me real quick, okay?
"[GALAN:]  What was that?
"[TROOPER SPERRY:]  I've got one other thing I'm going to have you do for me real quick. This is just a preliminary breath test, okay?
"[GALAN:]  Okay."

The district court found that Galan consented to the PBT. Galan argues Sperry failed to explicitly advise him that he had a right to refuse the PBT and therefore his consent was not voluntary. He further contends that because a "uniformed and armed officer with a tone of authority" told Galan to submit to the PBT, the only possible conclusion is that Galan consented under duress or coercion. Though Sperry did not

9

explicitly tell Galan he did not have to take the PBT, Galan did not produce any evidence that he relied upon any misstatement that Sperry made before agreeing to submit to the PBT. K.S.A. 8-1012 provides no requirement that a specific notice be given. We hold that Galan's consent to the PBT was voluntary.

Next, the district court "note[d] that the amount of evidence of impairment had already reached the threshold of probable cause that [Galan] was driving impaired before the trooper administered the preliminary breath test." As a result, the district court found that, even had Sperry arrested Galan before requesting the PBT, the arrest would have been valid, and the admissibility of the PBT was not dispositive to the validity of the driver's license suspension.

This court agrees with the district court's assessment. During his testimony, Sperry made it clear that he did not rely solely on the PBT for probable cause. Sperry testified that he considered the results of the PBT as part of the totality of the circumstances in determining that there was probable cause to arrest. There is substantial competent evidence supporting the district court's finding that there was sufficient probable cause to arrest even without the results of the PBT.

### THE DISTRICT COURT DID NOT ERR WHEN IT FOUND THERE WAS PROBABLE CAUSE TO ARREST GALAN AND REQUEST AN EVIDENTIARY BREATH TEST

On appeal, Galan argues there was no probable cause to believe he had been operating a vehicle under the influence of alcohol and, as a result, he was illegally arrested and Sperry was without authority to request further testing. He asserts that, "as a matter of law," the Kansas Supreme Court has found that the factors Sperry enumerated cannot rise to the level of probable cause. For support, Galan cites *Casper*, *Molitor*, and *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012).

10

Galan misstates the Kansas Supreme Court's holdings in these cases. In none of the cases did the court hold that, "as a matter of law," the evidence of intoxication relied on by law enforcement could not rise to probable cause. Instead, the Kansas Supreme Court ruled that, based on the totality of the circumstances, the evidence cited by law enforcement did not establish probable cause. Each of these cases will be discussed in more depth below.

To begin its analysis on this issue, the court looks at K.S.A. 8-1001(b)(1), which states, in relevant part:

> "One or more tests may be required of a person when, at the time of the request, a law enforcement officer has probable cause to believe the person has committed a violation of K.S.A. 8-1567(a), and amendments thereto, . . . ; and one of the following conditions exists:  (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death."

"Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that the defendant committed a specific crime." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010). Whether probable cause exists "is determined by evaluating the totality of the circumstances." 291 Kan. at 515.

In *Molitor*, the defendant failed to use a turn signal and struck the curb while pulling over for the officer. Molitor's eyes were bloodshot and watery, his vehicle smelled of alcohol, and he admitted to consuming "two or three beers." 301 Kan. at 253. However, Molitor did not slur his words, did not lose his balance exiting the vehicle, and had "no difficulty" producing his license, insurance, and registration. 301 Kan. at 253. The district court declined to suppress evidence regarding the horizontal gaze nystagmus

11

(HGN) test. Molitor had passing scores on the walk-and-turn and the one-leg stand field sobriety tests. 301 Kan. at 253-54.

On appeal, the Kansas Supreme Court reiterated that HGN results are insufficient to establish reasonable suspicion to request a PBT. Because the Court of Appeals had found that reasonable suspicion existed without the HGN test results, the Kansas Supreme Court conducted a harmless error review. 301 Kan. at 264. The *Molitor* court acknowledged that "evidence of unsafe driving can suggest intoxication" but, based on the totality of the circumstances—including passing two standardized field sobriety tests—"one could not reasonably suspect that Molitor's balance was impaired by alcohol to the point of being legally under the influence of alcohol." 301 Kan. at 268. As a result, the Kansas Supreme Court reversed the district court.

*Sloop* is also distinguishable. In *Sloop*, the officer observed no traffic infractions but stopped Sloop based on a nonfunctioning tag light. Sloop did not fumble when handing the officer his license, and Sloop's speech was impaired but not slurred. Sloop did not stumble getting out of the vehicle and was steady walking to the back of the vehicle. The officer performed both the HGN test and a PBT (but the results from both tests were not admitted into evidence). After these tests, the officer arrested Sloop and transported him to the station for further testing. The court noted it did not consider "the results of Sloop's field sobriety tests or other postarrest conduct in our probable cause to arrest calculus." 296 Kan. at 23. The Kansas Supreme Court found that there was no probable cause to arrest Sloop; his arrest was unlawful; and the resulting request to submit to the Intoxilyzer 8000 was not authorized. 296 Kan. at 23.

*Casper* is similarly unpersuasive. There, the district court determined "both that reasonable grounds did not exist for [the officer] to believe Casper was operating her vehicle while under the influence of alcohol and there was no lawful arrest because [the officer] lacked probable cause to make the arrest." 309 Kan. at 1215. The *Casper* panel

12

reversed the district court after finding the district court gave too much weight to some factors and, it believed, relied on some inappropriate factors. The Kansas Supreme Court reversed the Court of Appeals and affirmed the district court after giving deference to the factfinder below. The Kansas Supreme Court held that, after giving deference to the district court's factual findings, there was substantial competent evidence to support the district court's findings. 309 Kan. at 1221.

In summary, in *Molitor* the district court relied on evidence of impairment in an inadmissible test while ignoring Molitor's passing scores on two other field sobriety tests. In *Sloop*, the only prearrest sign of impairment was impaired, but not slurred, speech; all other evidence of impairment occurred after Sloop's arrest. And in *Casper*, the Kansas Supreme Court reversed the Court of Appeals because the panel reweighed the evidence instead of giving deference to the district court's factual findings. In none of these cases did the Kansas Supreme Court hold, as a matter of law, that watery and bloodshot eyes, admissions to drinking alcohol, impaired speech, or poor performance on the walk-and-turn and one-leg stand field sobriety tests were insufficient to establish probable cause.

Here, as previously discussed, substantial competent evidence supports the district court's finding that Sperry had probable cause to believe Galan was operating a vehicle under the influence of alcohol. Galan was unable to maintain his lane of travel. Sperry smelled the odor of alcohol, Galan had bloodshot eyes and slurred speech, and Galan admitted to drinking earlier in the evening. Galan was unable to recite the alphabet from D to Q or count backward from 77 to 59 without skipping numbers. Galan exhibited multiple clues on both the walk-and-turn test and the one-leg stand test. There is substantial competent evidence supporting the district court's finding that there was sufficient probable cause to arrest Galan for driving under the influence and to request testing.

13

The district court found that Galan's consent to the Intoxilyzer testing was knowing and voluntary because Sperry provided a copy of the DC-70 testing notices and "gratuitous information [Sperry] provided in response to [Galan's] questions accurately stated the law." On appeal, Galan argues the consent was coerced and was "voided by the misinformation." Specifically, Galan asserts Sperry "didn't give up until he ha[d] a consent and a test result." He further contends that the district court erred when it found Sperry provided accurate statements of law, because Sperry describing the suspension for a test refusal as "automatic" was a misstatement of law. Galan also takes issue with Sperry stating that he would only receive a 30-day suspension if he took the evidentiary breath test because a test failure can result in a 30-day or 1-year suspension depending on the level of the test.

Galan only cites *Cuthbertson v. Kansas Dept. of Revenue*, 42 Kan. App. 2d 1049, 1055, 220 P.3d 379 (2009) to support his argument. There, a panel of this court held that law enforcement was not required to provide any information regarding testing except the statutory notice but "once [the officer] dove into the pool of gratuitous information, his responses are required to be correct statements of law." 42 Kan. App. 2d at 1055. But Galan ignores the next two sentences of *Cuthbertson*: "Even in this situation, however, we revert to the fact that we are not dealing with statutorily mandated notices. The consequence is that Cuthbertson must demonstrate prejudice, which he cannot, in order to show reversible error." 42 Kan. App. 2d at 1055.

Galan has not argued, and cannot show, prejudice resulting from Sperry referring to the test-refusal suspension as "automatic" or from Sperry stating that a test-refusal suspension would be 30 days. Galan simply argues that the suspension is not automatic because "a hearing can be requested by the driver which extends privileges until an

14

administrative hearing." However, as the district court noted, "but for a person's subsequent affirmative steps to request a hearing, all administrative license suspensions arising from alcohol-related driving incidents will take effect without further adjudication by any authority."

Galan cites no authority suggesting that referring to a test-refusal suspension as "automatic" is a misstatement of law. Further, Galan cannot show prejudice. As previously discussed, Sperry had probable cause to request an evidentiary breath test. Had Galan refused testing and requested an administrative hearing, his license would have been suspended for a year based on the test refusal. K.S.A. 8-1014(a)(1). Similarly, because Galan's evidentiary breath test indicated a blood alcohol content of 0.094%, Sperry properly advised Galan of the driver's license suspension period. K.S.A. 8-1014(b)(1)(A).

Finally, despite Galan's argument to the contrary, the officers did not spend "nearly 30 minutes" "badger[ing]" him into submitting to testing. Sperry began reading the DC-70 at 29:20 in the video. After completing the DC-70 notices, Sperry asked if Galan would consent to the Intoxilyzer test. Galan immediately began questioning the difference between the PBT and an evidentiary breath test. Galan then began arguing about the sufficiency of Sperry's demonstration of the field sobriety tests and Sperry's probable cause. Sperry repeatedly informed Galan that it was his choice and explained Galan's options.

Approximately 11 minutes after reading the DC-70, Sperry informed Galan he would consider Galan's response a refusal. Galan continued to argue with Sperry regarding the sufficiency of probable cause. Then, Galan asked the other trooper what would happen based on the refusal. The other trooper explained the situation again. Subsequently, Galan engaged Sperry once more and asked again what would happen.

15

Sperry asked Galan if, understanding it better, he wanted to change his mind and Galan said he had changed his mind.

During the approximately 17-minute encounter between the reading of the DC-70 and Galan agreeing to take the evidentiary breath test, both troopers responded to Galan's questions and addressed his misconceptions; neither trooper "badgered" Galan to change his mind. The video footage confirms Sperry's testimony that he was not trying to change Galan's mind, but attempting to make sure Galan understood the notices in the DC-70. The district court did not err when it denied Galan's petition for review and affirmed the driver's license suspension based on this issue.

THE ELECTRONICALLY AFFIXED SIGNATURE DID
NOT INVALIDATE THE DC-27 FORM

Galan argues the DC-27 form is a jurisdictional document and, because the officer affixed his signature through the Intoxilyzer machine at the beginning of the process, the officer certified a blank document. He contends the document must be completed in its entirety before being sworn to. He asserts that the Intoxilyzer-generated DC-27 is not signed and contains no original marks and does not comply with K.S.A. 8-1002. Galan suggests that the Legislature could have authorized electronic signatures in K.S.A. 8-1002 but did not; therefore, K.S.A. 8-1002 requires "an actual sworn handwritten signature." As a result, he contends that the officer did not sign the DC-27 under oath and the suspension must be reversed.

Galan's arguments are not persuasive for two reasons. First, the statutory language does not require a handwritten signature. K.S.A. 8-1002(a) requires a law enforcement certification whenever a test is requested, and that test results in either a test failure or a test refusal. Under K.S.A. 8-1002(b), "certification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be

16

required." Kansas courts "do not add words to a statute; instead, we read the statutory language as it appears." *State v. Fleming*, 308 Kan. 689, 698, 423 P.3d 506 (2018). Galan's argument essentially requires this court to add the word "handwritten" to K.S.A. 8-1002.

These same arguments were made in *Brungardt v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 284, 288, 468 P.3d 791 (2020). There, the district court found the law enforcement officer's "physical signature was the certifying act, not later affixing the electronic signature to the completed form." 58 Kan. App. 2d at 289. As a result, the district court determined the officer certified a blank document. A panel of our court disagreed.

The panel noted that "Kansas law acknowledges that in the absence of a mandated signature format, it is a person's *intent in affixing his or her signature*, not its form, that controls its effectiveness." 58 Kan. App. 2d at 290. The panel continued:

>    "Thus, courts in this state have long recognized that 'signing' a document encompasses more than the physical act of manually writing a person's name. Instead, a signature is an indication by any distinctive mark—including a previously created image of an electronic signature—for the purpose of communicating and recording his or her authorization, certification, agreement, or identity. 'Signing' is merely the act of affixing that signature." 58 Kan. App. 2d at 290.

The *Brungardt* panel found that the DC-27 was signed when the officer's electronic signature was applied to the form and printed. 58 Kan. App. 2d at 290. This panel agrees with the reasoning in *Brungardt* and finds that an electronic signature complies with K.S.A. 8-1002 and the DC-27 is signed when it is printed.

THE DISTRICT COURT DID NOT APPLY AN INCORRECT BURDEN OF PROOF

Galan asserts that the district court did not apply the burden of proof correctly. Galan suggests this issue was briefed in Issue II of his appellate brief. In his discussion of that issue, Galan contends that the district court erred when it required him to prove that Sperry could not have obtained a warrant. This is the only discussion of the burden of proof in Issue II. To the extent Galan asserts the district court applied an incorrect burden of proof in any other context, he has abandoned the issue. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (an issue not briefed is deemed waived or abandoned). It is unnecessary to address whether the district court erred in finding he did not meet his burden to prove Sperry could not have obtained a warrant because there was sufficient probable cause supporting the request for a PBT.

Affirmed.